## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Civil Division

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | |
| Plaintiff, | |
| v. | Case No.: 1:05-cv-02462 (RMU/JMF) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, *et al.*, | |
| Defendant. | |

## DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S AMENDED ANSWER TO SECOND AMENDED COMPLAINT

**COMES NOW** defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union" or "defendant"), by counsel, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, pursuant to the Court's August 29, 2006 Order, and answers Federal National Mortgage Association's ("Fannie Mae") Second Amended Complaint as follows:

## NATURE OF ACTION

1.      Defendant admits that Fannie Mae is a named insured under a Financial Institution Bond ("the Bond"), and refers the Court to the Bond (attached to the Second Amended Complaint as Exhibit A) for the complete terms thereof. Defendant denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 1 of the Second Amended Complaint concerning Fannie Mae's relationship

with Olympia Mortgage Company ("Olympia") and Olympia's alleged theft.  According to the Federal Rules of Civil Procedure, these allegations are, therefore, deemed denied. Defendant denies each and every remaining allegation contained in paragraph 1 of the Second Amended Complaint.

2.     Defendant admits that plaintiff's Second Amended Complaint purports to set forth causes of action for declaratory judgment, breach of contract and breach of a contractual duty of good faith and fair dealing.  Defendant further admits that the Second Amended Complaint seeks damages for plaintiff's breach of contract claims, attorneys' fees, costs and pre-judgment interest.  Defendant denies that it has failed to honor any obligation to the plaintiff or that any such obligation exists.  Defendant further denies all liability alleged in the Second Amended Complaint, and denies that plaintiff is entitled to the relief sought therein.  Defendant denies each and every remaining allegation contained in paragraph 2 of the Second Amended Complaint.

## PARTIES

3.     Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 3 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

4.     Defendant admits each and every allegation contained in paragraph 4 of the Second Amended Complaint.

2

5.     Defendant admits that ACE American Insurance Company is an insurance company. Defendant denies knowledge or information sufficient to form a belief as the remaining allegations set forth in plaintiff's Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

## JURISDICTION AND VENUE

6.     It is admitted only that National Union is a corporation organized under the laws of the state of Pennsylvania, maintains its principal place of business in New York, is presently authorized to do business and is presently transacting business in the District of Columbia. The remaining allegations contained in paragraph 6 of the Second Amended Complaint are conclusions of law, as to which no response is required. To the extent any remaining allegations in paragraph 6 are deemed to require an answer, defendant denies these allegations.

7.     The allegations contained in paragraph 7 of the Second Amended Complaint are conclusions of law, as to which no response is required. To the extent any remaining allegations in paragraph 7 are deemed to require an answer, defendant denies all of these allegations.

8.     The allegations contained in paragraph 8 of the Second Amended Complaint are conclusions of law, as to which no response is required. To the extent the allegations in paragraph 8 are deemed to require an answer, defendant denies all of these allegations.

## GENERAL ALLEGATIONS

**A.    THE BOND**

9.    As to the allegations in paragraph 9 of the Second Amended Complaint, defendant admits only that Fannie Mae is a named insured under the Bond, and refers the Court to the Bond for the complete terms thereof. Defendant admits that a copy of the Bond is attached as Exhibit A to the Second Amended Complaint. Defendant states that the terms, conditions and exclusions contained in the Bond speak for themselves. Defendant denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 9 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

10.    Defendant admits only that Fannie Mae is a named insured under the Bond, and refers the Court to the Bond for the complete terms, conditions and exclusions thereof. Defendant states that the terms, conditions and exclusions contained in the Bond speak for themselves. Defendant denies the remaining allegations of paragraph 10 of the Second Amended Complaint.

11.    Defendant admits only that Fannie Mae is a named insured under the Bond, and refers the Court to the Bond for the complete terms, conditions and exclusions thereof. Defendant states that the terms, conditions and exclusions contained in the Bond speak for themselves. Defendant denies the remaining allegations of paragraph 11 of the Second Amended Complaint.

4

12.     Defendant admits only that Fannie Mae is a named insured under the Bond, and refers the Court to the Bond for the complete terms, conditions and exclusions thereof.  Defendant states that the terms, conditions and exclusions contained in the Bond speak for themselves. Defendant denies the remaining allegations of paragraph 12 of the Second Amended Complaint.

13.     Defendant admits only that Fannie Mae is a named insured under the Bond, and refers the Court to the Bond for the complete terms, conditions and exclusions thereof.  Defendant states that the terms, conditions and exclusions contained in the Bond speak for themselves. Defendant denies the remaining allegations of paragraph 13 of the Second Amended Complaint.

14.     Defendant admits only that Fannie Mae is a named insured under the Bond, and refers the Court to the Bond for the complete terms, conditions and exclusions thereof.  Defendant states that the terms, conditions and exclusions contained in the Bond speak for themselves. Defendant denies the remaining allegations of paragraph 14 of the Second Amended Complaint.

15.     Defendant admits only that the Bond contains exclusions to coverage. Defendant denies each and every allegation contained in paragraph 15 of the Second Amended Complaint.

16.     Defendant admits that Fannie Mae paid the appropriate premium for the Bond and that Fannie Mae submitted a Proof of Loss and an "Updated" Proof of Loss for its claim.  Defendant denies each and every remaining allegation contained in paragraph 16 of the Second Amended Complaint.

5

17.    Defendant admits only that a document purported to be an ACE Excess Financial Institution Bond is attached as Exhibit B to the Second Amended Complaint, and refers the Court to that Exhibit for the complete terms thereof. Defendant denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 17 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, these allegations are, therefore, deemed denied.

18.    Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 18 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, these allegations are, therefore, deemed denied.

**B.    OMC'S [ALLEGED] THEFT OF FANNIE MAE PAYOFF PROCEEDS**

**(1)    OMC's Servicer Obligations to Fannie Mae and the Loan Servicing Program.**

19.    Defendant admits that, at times, Fannie Mae purchases mortgages in the secondary mortgage market. Defendant denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 19 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

20.    Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 20 of the Second Amended Complaint. According to the Rules of Civil Procedure, the allegations are, therefore, deemed denied.

21.    Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 21 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

22.    Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 22 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

23.    Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 23 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

24.    Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 24 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

25.    Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 25 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

26.    Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 26 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

(2)    **The [Alleged] Fraud Perpetrated on Fannie Mae by OMC.**

27.    Defendant denies each and every allegation contained in paragraph 27 of the Second Amended Complaint.

28.    Adopting plaintiff's terminology, defendant admits, on information and belief, that the purpose of "B Loans" was to refinance "A Loans." Defendant denies each and every remaining allegation contained in paragraph 28 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

29.    Defendant admits, upon information and belief, that Olympia sold "B Loans" to Fannie Mae. Defendant denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 29 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

30.    Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 30 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

31.     Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 31 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

32.     Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 32 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

33.     Defendant denies each and every allegation contained in paragraph 33 of the Second Amended Complaint.

34.     Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 34 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

35.     Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 35 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

36.     Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 36 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

241016.1

37.     Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 37 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

38.     Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 38 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

39.     Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 39 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

40.     Defendant denies that Fannie Mae's alleged loss resulted "solely and directly from OMC's theft of loan payoff proceeds." Defendant denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 40 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

   **(3)    Fannie Mae's Discovery of OMC's [Alleged] Fraud and Fannie Mae's [Alleged] Efforts to Mitigate its Losses.**

41.     Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 41 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

10

42.     Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 42 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

43.     Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 43 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

44.     Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 44 of the Second Amended Complaint. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.

**(4)     National Union's [Alleged] Failure to Honor Its Contractual Obligations Under the Bond.**

45.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45 of the Second Amended Complaint to the extent these allegations are directed at others.  According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.  Defendant denies each and every remaining allegation contained in paragraph 45 of the Second Amended Complaint, except admits that on or about October 29, 2004, National Union received a copy of Fannie Mae's October 28, 2004 letter to Willis of New York.

241016.1

46.    Defendant denies each and every allegation contained in paragraph 46 of the Second Amended Complaint, except it admits that Fannie Mae (and/or its representatives) and National Union (and/or its representatives) had at least four meetings and a number of telephone calls relating to the background of Fannie Mae's claim and the activities of Fannie Mae and Olympia. However, defendant denies any implication that Fannie Mae was fully cooperative.

47.    Defendant admits that Fannie Mae provided certain responses and produced certain documents requested by or on the behalf of National Union related to Fannie Mae's alleged loss. However, defendant denies any implication that Fannie Mae was fully cooperative. Defendant denies each and every remaining allegation contained in paragraph 47 of the Second Amended Complaint.

48.    Defendant admits that Fannie Mae provided a draft proof of loss dated April 7, 2005, a proof of loss dated June 23, 2005, and an amended or "Updated" proof of loss dated December 22, 2005. Defendant admits that a copy of Fannie Mae's "Updated" Proof of Loss (without exhibits) is attached to the Second Amended Complaint as Exhibit C. Defendant denies each and every remaining allegation contained in paragraph 48 of the Second Amended Complaint.

49.    Defendant denies each and every allegation contained in paragraph 49 of the Second Amended Complaint.

241016.1

50.     Defendant admits that National Union (and/or its representatives) had discussions and exchanges of correspondence relating to Fannie Mae's request for coverage under the Bond for its claims related to Olympia, and that National Union (and/or its representatives), as it learned additional facts, has indicated that coverage is not afforded for the Olympia matter under the Bond because, *inter alia*, Olympia's acts do not fall within the Servicing Contractor Insuring Agreement or the Mortgage Fraud Insuring Agreement. Defendant further avers that National Union (and/or its representatives) has indicated that it would be receptive to the production by Fannie Mae of any additional documents that might establish coverage. National Union's averments herein should not be deemed a waiver of any objection by National Union to the introduction of facts concerning settlement conversations. Defendant denies each and every remaining allegation contained in paragraph 50 of the Second Amended Complaint.

51.     Defendant admits that it asserts, *inter alia*, that Fannie Mae's claimed losses do not arise out of Olympia's servicing of the "A Loans," that the claimed losses relate to Olympia's sale and Fannie Mae's purchase of the "B Loans," and that Rider 2 to the Bond, by its terms, does not provide coverage for Fannie Mae's claim. Defendant denies each and every remaining allegation contained in paragraph 51 of the Second Amended Complaint.

52.     Defendant admits each and every allegation contained in paragraph 52 of the Second Amended Complaint.

53.     Defendant admits each and every allegation contained in paragraph 53 of the Second Amended Complaint, except denies that Fannie Mae has ever requested or asserted its entitlement to coverage under any other insuring agreement of the Bond.

54.    Defendant admits that National Union (and/or its representatives) has asserted that even if Fannie Mae's purported loss were to fall within the Servicing Contractor or Mortgage Fraud Insuring Agreements, then other provisions of the Bond would nonetheless preclude coverage. Defendant further avers that National Union (and/or its representatives) has indicated that it would be receptive to the production by Fannie Mae of any additional documents that might establish coverage. National Union's averments herein should not be deemed a waiver of any objection by National Union to the introduction of facts concerning settlement conversations. Defendant denies each and every remaining allegation contained in paragraph 54 of the Second Amended Complaint.

55.    Defendant admits that in a meeting between representatives of Fannie Mae and National Union's representatives, it was indicated that, based upon the information it had, National Union believed that coverage was not afforded for Fannie Mae's claim. Defendant further avers that National Union (and/or its representatives) has indicated that it would be receptive to the production by Fannie Mae of any additional documents that might establish coverage. National Union's averments herein should not be deemed a waiver of any objection by National Union to the introduction of facts concerning settlement conversations. Defendant denies each and every remaining allegation contained in paragraph 55 of the Second Amended Complaint.

56.    Defendant admits that at various times National Union (and/or its representatives) explained (both in writing and orally) to Fannie Mae its coverage positions based upon provided information. Defendant denies each and every remaining allegation contained in paragraph 56 of the Second Amended Complaint.

14

57.     Defendant admits that counsel for Fannie Mae sent a letter to National Union dated November 29, 2005 and that National Union responded by letter dated December 19, 2005. These letters speak for themselves. Defendant denies each and every remaining allegation contained in paragraph 57 of the Second Amended Complaint.

58.     Defendant denies each and every allegation contained in paragraph 58 of the Second Amended Complaint.

59.     Defendant denies each and every allegation contained in paragraph 59 of the Second Amended Complaint.

60.     Defendant denies each and every allegation contained in paragraph 60 of the Second Amended Complaint.

61.     Defendant denies knowledge or information to form a belief as to the truth of the allegations contained in paragraph 61 of the Second Amended Complaint to the extent these allegations are directed at others. According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied. Defendant denies that it has failed to honor any obligation to the plaintiff or that any such obligation exists. Defendant denies the remaining allegations contained in paragraph 61 of the Second Amended Complaint to the extent directed at National Union.

15

241016.1

62.    Defendant denies knowledge or information to form a belief as to the truth of the allegations contained in paragraph 62 of the Second Amended Complaint to the extent these allegations are directed at others.  According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.  Defendant denies that it has failed to honor any obligation to the plaintiff or that any such obligation exists. Defendant denies the remaining allegations contained in paragraph 62 of the Second Amended Complaint to the extent directed at National Union.

**COUNT ONE:        DECLARATORY JUDGMENT**

63.    Answering paragraph 63 of the Second Amended Complaint, National Union incorporates its responses to paragraphs 1 through 62 as if fully set forth herein.

64.    Defendant admits that Fannie Mae purports to seek relief pursuant to the authority set forth in paragraph 64 of the Second Amended Complaint.  Defendant denies that it has failed to honor any obligation to the plaintiff or that any such obligation exists. Defendant further denies all liability alleged in the Second Amended Complaint, and denies that plaintiff is entitled to the relief sought therein.  Defendant denies each and every remaining allegation contained in paragraph 64 of the Second Amended Complaint.

65.    The allegations contained in paragraph 65 of the Second Amended Complaint are conclusions of law, as to which no response is required.  To the extent the allegations in paragraph 65 are deemed to require an answer, defendant denies all of these allegations.

66.    Defendant denies each and every allegation contained in paragraph 66 of the Complaint.

16

67.    Defendant denies knowledge or information to form a belief as to the truth of the allegations contained in paragraph 67 of the Second Amended Complaint to the extent these allegations are directed at others.  According to the Federal Rules of Civil Procedure, the allegations are, therefore, deemed denied.  Defendant denies the remaining allegations contained in paragraph 67 of the Second Amended Complaint to the extent directed at National Union.

### COUNT TWO:    [ALLEGED] BREACH OF CONTRACT (FAILURE TO PROVIDE COVERAGE)

68.    Answering paragraph 68 of the Second Amended Complaint, National Union incorporates its responses to paragraphs 1 through 67 as if fully set forth herein.

69.    Defendant denies each and every allegation contained in paragraph 69 of the Second Amended Complaint.

70.    Defendant denies each and every allegation contained in paragraph 70 of the Second Amended Complaint.

71.    Defendant denies each and every allegation contained in paragraph 71 of the Second Amended Complaint.

72.    Defendant denies each and every allegation contained in paragraph 72 of the Second Amended Complaint.

73.    Defendant denies each and every allegation contained in paragraph 73 of the Second Amended Complaint.

**COUNT THREE:    [ALLEGED] BREACH OF CONTRACT
(BREACH OF THE IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING)**

74.    Answering paragraph 74 of the Second Amended Complaint, National

Union incorporates its responses to paragraphs 1 through 73 as if fully set forth herein.

75.    The allegations contained in paragraph 75 of the Second Amended

Complaint are conclusions of law, as to which no response is required.  By way of further

answer, the Bond is in writing and speaks for itself.  To the extent the allegations in

paragraph 75 are deemed to require an answer, defendant denies all of these allegations.

76.    Defendant denies each and every allegation contained in paragraph 76 of

the Second Amended Complaint.

77.    Defendant denies each and every allegation contained in paragraph 77 of

the Second Amended Complaint.

78.    Defendant denies each and every allegation contained in paragraph 78 of

the Second Amended Complaint.

79.    Defendant denies each and every allegation contained in paragraph 79 of

the Second Amended Complaint.

**BACKGROUND ALLEGATIONS APPLICABLE
TO ALL AFFIRMATIVE DEFENSES**

80.    Upon the assumption that Fannie Mae interacted with Olympia in whole

or in part in the manner alleged in its Complaint and/or in its proof of loss, National

Union alleges upon information and belief the following facts which support the

affirmative defenses that follow.

241016.1

81.     Olympia was a small mortgage banker principally located in Brooklyn, New York. Olympia did not have sufficient capital of its own to originate mortgage loans and therefore funded its loans by borrowing from certain "warehouse lending" banks, that is, receiving short term temporary loans which were secured by the mortgage note and were intended to be paid off by the sale of the mortgage to a purchaser of mortgages, such as Fannie Mae.

82.     Fannie Mae is a government sponsored enterprise which operates under a charter granted by the United States Congress that allows Fannie Mae to operate in the "Secondary Mortgage Market." In other words, Fannie Mae is permitted to buy mortgages. Fannie Mae under its charter is not permitted to engage in the "Primary Mortgage Market," that is, it is not permitted to engage in the business of making mortgage loans or the financing of mortgage loans. Fannie Mae is permitted by its charter to buy mortgage loans that have already been made and financed by other lenders, such as Olympia and its warehouse banks, but it is not permitted to originate the loans that Olympia made, nor to finance them.

83.     Fannie Mae's claim is based upon 257 mortgage loans for which the homeowners sought refinancing. Adopting plaintiff's terminology, the existing mortgage being refinanced in each of these transactions is referred to in Fannie Mae's proof of loss as an "A Loan." The new mortgage refinancing the old mortgage is referred to in Fannie Mae's proof of loss as the "B Loan." In all of the loans in issue, both the "A Loan" and the "B Loan" were sold to Fannie Mae.

84.    Except for a few of the loans at issue, all of the loans at issue were made
in New York and involve a certain "Streamlined"[1] refinancing program that did not entail
any increase in the amount borrowed but only entailed a change in either or both the
interest rate or the term (length) of the mortgage. Because of declining interest rates
there was a significant demand on the part of borrowers to refinance mortgages on their
homes so as to pay a lower interest rate. Upon information and belief, the streamlined
no-cash-out refinances were designed by Fannie Mae to avoid New York's mortgage
recording tax by having the "B Loan" incorporate salient terms of the "A Loan."
However, the "A" and "B" Loans on each mortgage involved two separate loans
embodied in two separate notes, and in the vast majority of cases Fannie Mae marketed
and sold the "A" and "B" Loans to the investing public in a process called securitization.
In the securitizations, Fannie Mae guaranteed the payments of principal and interest to
the investors.

85.    When Fannie Mae bought the "B Loans" at issue from Olympia, it
required that Olympia represent and in fact sell loans that were fully valid and
enforceable loans, free and clear of any prior liens. Likewise, when Fannie Mae sold
those loans to the investing public, it explicitly and/or implicitly represented that the
loans at issue were fully valid and enforceable loans, free and clear of any prior liens.
Accordingly, the "B Loans" were supposed to have been valid, first liens on the
borrowers' homes and there were not supposed to have been any other mortgage loans on
the borrowers' homes at the time the "B Loans" were purchased by Fannie Mae. The "A
Loans" were required to be paid off before Fannie Mae could purchase the "B Loans."
As of a specific date as set forth on the HUD-1 closing statements, an "A Loan" was

---

[1] Streamlined is meant to mean that no new appraisal was required.

required to come off the property, with the "B Loan" replacing it as the sole loan and first

lien on the property. According to Fannie Mae's rules, and the borrowers' and investors'

understandings, in no cases were properties to have "A" and "B" loans on them

simultaneously.

86.    In the instances in which the "A Loans" had been purchased by Fannie

Mae and resold into securitization pools, cash had to be paid to the investors in the

securitization pools to pay off the "A Loans" in connection with the refinancing of the "A

Loans" by "B Loans." However, Olympia did not have sufficient funds to finance a large

magnitude of refinancings. Hence, Olympia did not use any of its own funds to pay off

the "A Loans," instead it used the sale proceeds of "B Loans" to supply the money

required to pay off the "A Loans."

87.    Fannie Mae had the capability through its staff, including accountants and

lawyers, to confirm Olympia's representations and the use of the proceeds from the

purchase of the "B Loans." Fannie Mae's alleged losses stem from its practice (which is

believed to be a widespread practice by Fannie Mae) of allowing Olympia (and it is

believed other mortgage originators) to use Fannie Mae's money in the form of a

refinancing loan (such as the "B Loans") purchase to fund the payoff of an existing loan

(such as the "A Loans") on a borrower's home. Thus, as set forth below Fannie Mae was

in actuality or in effect engaging in the primary lending and origination market in

violation of its charter, as it was engaging in transactions in the nature of a loan to

Olympia by giving it unrestricted funds in payment of "B Loans" where the

corresponding "A Loan" on the borrower's home had not been paid off.

21

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

88.    Rider 2 of the Bond provides insurance for "Loss resulting solely and directly from one or more dishonest or fraudulent acts by a Servicing Contractor . . . The term Servicing Contractor shall mean . . . a corporation and (its) employees duly authorized by the Insured (Fannie Mae) under written agreement with the Insured to perform servicing activities with respect to mortgage loans owned by the Insured and other types of loans the Insured is authorized by its charter to own but only while such . . . corporation . . . is actually performing such services . . . and **NOT** while acting in any other capacity, whether on behalf of the Insured or otherwise, including but not limited to the making of any real estate mortgage." (emphasis in original).

89.    When Olympia sold the "B Loans" to and obtained proceeds from Fannie Mae, Olympia was acting as a seller and not as a servicer.

90.    Olympia caused Fannie Mae to deposit the proceeds of the "B Loans" in Olympia's operating account, in its capacity as a seller and not as a servicer.

91.    The cause of any loss to Fannie Mae was activity by Olympia acting solely or predominantly as a seller and not as a servicer.

92.    As a result, Fannie Mae's purported loss does not fall within the Bond's insuring agreements, and thus there is no coverage for these losses under the Bond.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

93.    Pursuant to paragraph 3(c) of Rider 2 of the Bond, the Servicing Contractor's Insuring Agreement excludes "loss through the failure of any Servicing Contractor to collect or receive money for the account of the Insured."

94.    Fannie Mae sent the "B Loan" sale proceeds to Olympia's general operating account, and as a result, those sums were never collected or received in the servicing accounts of Olympia.

95.    Accordingly, Fannie Mae's purported loss is excluded from coverage by paragraph 3(c) of Rider 2 of the Bond

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

96.    Pursuant to paragraph 3(e) of Rider 2 of the Bond, the Servicing Contractor's Insuring Agreement excludes "loss resulting directly or indirectly from the complete or partial nonpayment of, or default upon, any loan or transaction in the nature of a loan or an extension of credit made to a Servicing Contractor, including any such loan or transaction established to provide funds for interim financing or 'warehousing' of mortgage loans whether procured in good faith or through fraud or false pretense."

97.    Fannie Mae knew, should have known and/or recklessly disregarded the fact that "B Loan" sale proceeds were supposed to be used to pay off refinanced "A Loans."

98.    Fannie Mae purchased the "B Loans" from Olympia when it knew or should have known that the "A Loans" had not yet been paid off.

99.    By purchasing the "B Loans" at a time when the "A Loans" had not yet been paid off, and by allowing Olympia the unrestricted use of the proceeds of the "B Loan" purchases pending a payoff by Olympia of the "A Loans," failing which Olympia was obligated to repurchase the "B Loans," Fannie Mae was engaging in a transaction in the nature of a loan to Olympia and/or extending credit to Olympia.

23

100.    Accordingly, Fannie Mae's purported loss is excluded from coverage by paragraph 3(e) of Rider 2 of the Bond.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

101.    Pursuant to paragraph 3(a) of Rider 3 of the Bond, the Forged and Fraudulent Mortgages Insuring Agreement excludes "loss resulting from acts committing subsequent to the purchase of mortgage loans by the Insured."

102.    The alleged failure of Olympia to pay off the "A Loans" occurred subsequent to Fannie Mae's purchase of those "A Loans."  Similarly, the failure of Olympia to use the "B Loan" sales proceeds to pay off the "A Loans" occurred subsequent to Fannie Mae purchasing the "B Loans."

103.    Accordingly, Fannie Mae's purported loss is excluded from coverage by paragraph 3(a) of Rider 3 of the Bond.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

104.    Pursuant to paragraph 4 of Rider 3 to the Bond, the Forged and Fraudulent Mortgages Insuring Agreement is subject to the following warranty:

> it is a condition precedent to the Insured having in good faith purchased any Loan that the Insured shall not have released any funds prior to having received each Mortgage Loan . . . or having received a certification or receipt from its designated document custodian.

105.    Upon information and belief, at the time Fannie Mae bought the respective "B Loans" it knew or should have known or recklessly disregarded that the mortgage loans were not completed loan transactions and the "A Loans" had not been paid off.

106.    Accordingly, there is no coverage under the Forged and Fraudulent Mortgages Insuring Agreement for Fannie Mae's purported loss.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

107.    Pursuant to Section 6 of the Bond (entitled "Computation of Loss"),

> all Money received by the Insured (Fannie Mae) from any
> source whatsoever in connection with any matter from
> which a claimed loss has arisen, including payments and
> receipts of principal, interest, dividends, commissions and
> the like whenever received, shall be deducted from the
> amount actually paid out, advanced, withdrawn, taken or
> otherwise lost.

108.    Fannie Mae received approximately $12 million on account of certain of the loans mentioned in connection with its alleged loss, of which $9 million was interest.

109.    Fannie Mae's Proof of Loss does not take this $9 million into account in computing the extent of its purported loss.

110.    As a result, in the event that the Court finds that Fannie Mae suffered a loss that is covered by the Bond, its damages should be reduced by $9 million.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

111.    Fannie Mae knew or should have known and/or recklessly disregarded the fact that as of the time it bought a "B Loan," the corresponding "A Loan" on the borrower's home had not been paid off.

112.    Fannie Mae nonetheless sold some or all of the "B Loans" to securitization pools while characterizing them to the securitization pools as unencumbered first mortgages.

113.    To the extent that Fannie Mae's damages stem from its need to remove encumbrances from the "B Loans" in order to satisfy its obligations to the owners of the securitization pools, Fannie Mae is precluded from recovering from National Union by the doctrine of unclean hands and other applicable equitable defenses.

241016.1

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

114.    The Bond requires, *inter alia*, that the insured's loss result solely and directly from the dishonest and fraudulent acts of a Servicing Contractor. Fannie Mae's damages stem from its contractual guarantee that its mortgage backed securities were based upon valid first lien mortgages. The alleged loss is for this reason and others, an indirect loss related to a contractual guarantee of Fannie Mae that is separate and apart from its seller and servicer arrangements, and is not an insured loss.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

115.    Plaintiff's Second Amended Complaint fails to state a claim or cause of action upon which relief can be granted against defendant.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

116.    Plaintiff's causes of action are barred by waiver.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

117.    Plaintiff's causes of action are barred by estoppel.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

118.    Plaintiff's causes of action are barred by the equitable doctrine of laches.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

119.    Fannie Mae's method of operation in connection with the streamline refinance program constituted a violation of its charter as above alleged and materially increased Fannie Mae's risk of loss. In addition, Fannie Mae's conduct of its business was adversely impacted by material inadequacies and weaknesses in its internal controls and accounting systems including controls and systems relating to its monitoring of the activities of mortgage sellers/servicers. Both of these facts, among others, were material

241016.1

to National Union's underwriting decisions and undisclosed to National Union at the time

of the underwriting of the Bond. Despite these facts, Fannie Mae, in connection with its

application for the Bond, represented that its auditing procedures and other systems used

to monitor and oversee the activities of mortgage sellers/servicers, and to protect itself

from loss by reason of fraud or other misconduct by them, were of the best possible

quality and were "state of the art." This representation was false and/or misleading.

Plaintiff's causes of action are therefore barred.

### AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

120.    Plaintiff's causes of action are barred to the extent that plaintiff's acts or

omissions with respect to its interactions with Olympia were in violation of any law,

regulation or statute, or violation of public policy.

### AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

121.    Plaintiff's causes of action are barred in whole or in part by the terms,

exclusions (including, but not limited to exclusions (t), (u) and (v) in Section 2,

"Exclusions" of the Bond), conditions and limitations contained in the Bond.

### AS AND FOR AN SIXTEENTH AFFIRMATIVE DEFENSE

122.    Plaintiff's causes of action are barred to the extent plaintiff's Second

Amended Complaint seeks coverage for claims that arise out of plaintiff's intentional or

willful conduct. To the extent plaintiff did know, expect or intend or should have known

or expected that its practices or acts would cause the loss alleged in the Second Amended

Complaint, there is no coverage for that loss.

### AS AND FOR A SEVENTEENTH AFFIRMATIVE DEFENSE

123.    Plaintiff has failed to perform all of its obligations under the Bond.

241016.1

### AS AND FOR A EIGHTEENTH AFFIRMATIVE DEFENSE

124.    Plaintiff's cause of action is barred to the extent that plaintiff has failed to mitigate, minimize or avoid any damage it allegedly sustained, and recovery against defendant, if any, must be reduced by that amount.

### AS AND FOR A NINETEENTH AFFIRMATIVE DEFENSE

125.    Defendant is not liable to plaintiff for any "lost executive time and productivity," prejudgment interest or attorneys' fees incurred by plaintiff in this proceeding, as alleged in paragraphs 72 and 79 of the Second Amended Complaint.

### AS AND FOR A TWENTIETH AFFIRMATIVE DEFENSE

126.    This forum is not the appropriate venue for the disposition of some or all of the claims asserted in the Second Amended Complaint.

### AS AND FOR A TWENTY-FIRST AFFIRMATIVE DEFENSE

127.    Defendant performed each and every duty that is owed plaintiff. Defendant breached no duties allegedly owed to plaintiff.

### AS AND FOR A TWENTY-SECOND AFFIRMATIVE DEFENSE

128.    Defendant's liability, if any, is limited, *inter alia*, by the "Limit of Liability Under this Bond and Prior Insurance" (Section 8) "Other Insurance or Indemnity" (Section 9) and "Deductible Amount" (Section 11) clauses contained in the Bond.

### AS AND FOR A TWENTY-THIRD AFFIRMATIVE DEFENSE

129.    Fannie Mae advanced money to Olympia in anticipation of a purchase of the B loans.  If Fannie Mae establishes that this transaction was made in connection with a servicing function, which is disputed, any loss resulting from this transaction is excluded by paragraph 3(e) of Rider 2 of the Bond.

### AS AND FOR A TWENTY-FOURTH AFFIRMATIVE DEFENSE

130.    On information and belief, Fannie Mae, more than 30 days prior to its discovery of the acts by Olympia alleged in the Amended Complaint, discovered one or more other dishonest or fraudulent acts by Olympia.  The Bond was thereupon automatically cancelled as to Olympia and/or coverage under the Bond as to Olympia never incepted, and Fannie Mae's claims are barred, pursuant to Paragraph 4 of Rider 2 of the Bond.

Unless specifically admitted herein, all allegations of the Second Amended Complaint are denied.  Defendant also reserves its right to assert any and all additional defenses as discovery is completed and the precise nature of plaintiff's claims is ascertained.

**WHEREFORE,** defendant National Union respectfully requests judgment dismissing plaintiff's Second Amended Complaint and for such other and further relief as this Court deems just and proper.

241016.1

Dated:  September 11, 2006

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP


_____/s/_____
Paul D. Krause, Esq. (Bar No. 222069)
Robert B. Wallace, Esq. (Bar No.108571)
1341 G Street, N.W., Suite 500
Washington, D.C.  20005
Tel. (202) 626-7660
Fax (202) 628-3606

D'AMATO & LYNCH
Ronald H. Alenstein, Esq. (pro hac vice)
70 Pine Street
New York, NY 10270
Tel. (212) 269-0927
Fax  (212) 269-3559

**_Counsel for Defendant, National Union_**
**_Fire Insurance Company of Pittsburgh, PA_**

241016.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of **DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S AMENDED ANSWER TO SECOND AMENDED COMPLAINT** was served, via electronic filing, on the 11th day of September 2006, to

> Matthew Schlesinger, Esquire
> Reed Smith, LLP
> 1301 K Street, N.W.
> Suite 1100 – East Tower
> Washington, D.C. 20005-3323
>
> Alan Joaquin, Esquire
> Drinker Biddle & Reath
> 1500 K Street, N.W.
> Suite 1100
> Washington, D.C. 20005

/s/
Robert B. Wallace

241016.1